UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| IN RE: | ) | |
| SUBPOENA DUCES TECUM SERVED | ) | No. 3:12-MC-32 |
| UPON C. HOWARD CAPITO, | ) | (VARLAN/SHIRLEY) |
| | ) | |
| *As related to* | ) | |
| | ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) | No. 2:10-CV-1588-GLL |
| And WHEELING & LAKE ERIE RAILWAY COMPANY, | ) | (W.D. Penn.) |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| PITTSBURG & WEST VIRGINIA RAILROAD, | ) | |
| And POWER REIT, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the order of the District Judge [Doc. 3] referring the Motion to Quash Non-Party Subpoena to C. Howard Capito and for Protective Order [Doc. 1], filed by Wheeling & Lake Erie Railway Company to the undersigned for disposition.

I.  **BACKGROUND**

On July 12, 1962, the Pittsburgh & West Virginia Railway Company, the predecessor of Pittsburg & West Virginia Railroad ("P&WV"), entered into a lease agreement with Norfolk & Western Railway Company ("Norfolk Western"), a predecessor to Norfolk Southern Railway Company ("Norfolk Southern"), relating to a portion of main line railroad extending from Pittsburgh Junction, Ohio to Connellsville, Pennsylvania, along with branch rail lines. It is alleged that as part of this lease, Norfolk Western assumed all aspects of the operation of the rail

line and nearly all right, title, and interest to its property – including executive, accounting, financial, dispatching, engineering, and maintenance responsibilities for the rail line. On May 17, 1990, Wheeling & Lake Erie ("W&LE") entered into a sublease of the rail line with Norfolk Western. It is alleged that W&LE, through the assumption of rights and obligations of Norfolk Western maintains, manages, and operates the rail line.

The parties to the underlying action operated pursuant to their lease agreements in apparent harmony for decades. In 2011, however, W&LE filed a declaratory action in the Western District of Pennsylvania seeking a determination that certain actions by W&LE and Norfolk Southern did not constitute a default under their lease agreement. Defendants filed a counterclaim relating to Norfolk Southern's refusal to allow P&WV to inspect Norfolk Southern's books pursuant to their lease.

On October 3, 2012, Howard Capito was deposed in connection with the suit pending in the Western District of Pennsylvania. Mr. Capito served on P&WV's board of trustees from 2004 until 2008. He has also acted as a financial consultant to W&LE. On October 5, 2012, P&WV served a Subpoena to Testify at a Deposition in a Civil Action, [Doc. 2-7], on Mr. Capito in Knoxville, Tennessee. The Subpoena was issued by the Clerk of Court for the Eastern District of Tennessee, and it ordered that testimony be given and documents be produced in Knoxville, Tennessee, on November 9, 2012. On October 17, 2012, W. Tyler Chastain, counsel for Mr. Capito, sent a letter to counsel for W&LE providing an inventory entitled "Document Inventory as of October 15, 2012," along with a computer document inventory. [Doc. 2-2].

The instant Motion to Quash was filed by W&LE on November 20, 2012, and referred to the undersigned on December 6, 2012. On December 4, 2012, P&WV filed its response in opposition to the Motion to Quash, and W&LE filed a final reply on December 11, 2013. The

parties agreed to present arguments to the undersigned on January 17, 2013. The Court heard the parties' arguments on January 17, 2013, and has reviewed the parties' supplemental filings.

The Court finds that the Motion to Quash Non-Party Subpoena to C. Howard Capito and for Protective Order is now ripe for adjudication, and for the reasons stated below, it will be **DENIED**.

**II.    POSITIONS OF THE PARTIES**

W&LE states that the parties have agreed to production of many of the documents listed in the inventories provided by Mr. Capito, and these documents were produced November 12, 2012. [Doc. 2]. W&LE submits that P&WV continues to pursue production of certain documents related only to W&LE, which it argues are confidential and irrelevant to the claims in the litigation in the Western District of Pennsylvania. W&LE maintains that the Subpoena amounts to a fishing expedition and should be quashed.

P&WV has responded in opposition. [Doc. 7]. P&WV argues, first, that the Motion to Quash is untimely because it was filed after the time for complying had expired. Second, P&WV argues that the Motion to Quash should be denied because W&LE has a contractual obligation to produce its books, records, and documents to P&WV "for any purpose whatsoever." Further, P&WV argues that the documents to be produced pursuant to the Subpoena are relevant to the litigation in the Western District of Pennsylvania, and W&LE has not demonstrated that the documents are confidential.

In its reply [Doc. 15], W&LE argues that P&WV is attempting to circumvent the Court in the Western District of Pennsylvania by subpoenaing the documents from Mr. Capito in the Eastern District of Tennessee, when P&WV has requested that W&LE produce the very same information in the underlying litigation. W&LE argues that the Motion to Quash is not untimely

because P&WV, and counsel for Mr. Capito, were aware that W&LE planned to file a Motion to Quash. W&LE argues that the documents requested are confidential because they have been treated as confidential by Mr. Capito and W&LE does not have a contractual obligation to produce its books and records to P&WV.

The parties reiterated and honed their positions at oral arguments before the undersigned. They also filed post-hearing briefs, which the Court has considered despite their lack of compliance with Rule 7.1(d) of the Local Rules of the Eastern District of Tennessee.[1]

**III. ANALYSIS**

In its Motion to Quash, W&LE moves to quash the Subpoena pursuant to Rule 45(c)(3)(B)(i) of the Federal Rules of Civil Procedure which authorizes a court to quash or modify a subpoena if compliance with the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information."

"Generally, only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena." Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 590 (D. Kan. 2003) (citation omitted). "The Sixth Circuit has observed that '[o]rdinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought.'" Johnson v. Guards Mark Sec., No. 4:04 CV 2447, 2007 WL 1023309, at *1 (N.D. Ohio Mar.31, 2007) (quoting Mann v. Univ. of Cincinnati, Nos. 95–3195, 95–3292, 1997 WL 280188, at *4 (6th Cir. May 27, 1997)). "The only basis upon which a party could have

---

[1] Rule 7.1(d) of the Local Rules provides that, beyond an opening brief, response and reply, "[n]o additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed *without prior approval of the Court*, except that a party may file a supplemental brief of no more than 5 pages to call the Court's attention to developments occurring after a party's final brief is filed." E.D. Tenn. L.R. 7.1(d) (emphasis added). W&LE filed a seven-page supplemental brief, without permission, following the hearing. P&WV objected to this filing based upon its lack of compliance, but it also supplemented its position in its oppositional brief. The Court will consider the parties even and afford weight to these supplements to the extent it finds appropriate.

standing to quash a non-party subpoena would be a claim or personal right or privilege." Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013) (citing Hackmann v. Auto Owners, Ins. Co., 2009 WL 330314 (S.D. Ohio Feb.6, 2009); Donahoo v. Ohio Dept. Of Youth Services, 211 F.R.D. 303, 306 (N.D. Ohio 2002).

Rule 45(c)(3)(A) requires that a motion to quash be "timely" filed. "It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena." F.T.C. v. Trudeau, 2012 WL 5463829, at *3 (N.D. Ohio, Nov. 8, 2012) (citing Estate of Ungar v. Palestinian Auth., 451 F.Supp.2d 607, 610 (S.D.N.Y.2006)).

*A. Timeliness of the Motion to Quash*

The Court turns first to the timeliness of the Motion to Quash. The Court finds that the motion was filed after the return date of the subpoena, and it is, therefore, not timely. The Court, however, finds that P&WV has not been prejudiced by the Motion to Quash being filed after the return date, because counsel for P&WV and Mr. Capito were aware that W&LE intended to file a Motion to Quash and were also aware that Mr. Capito did not anticipate producing the documents requested at the date and time designated in the Subpoena. The Court finds that, given the lack of prejudice, it is appropriate to address the merits of the Motion to Quash despite its untimeliness. See Estate of Ungar, 451 F.Supp.2d at 610; Trudeau, 2012 WL 5463829, at *3.

*B. Claim or Personal Right or Privilege*

W&LE argues that it has standing to object to the Subpoena and to move to quash the Subpoena because the information requested by the subpoena is confidential or proprietary. In a somewhat cursory manner, W&LE argues that it has standing to move to quash the Subpoena because the the documents that P&WV demands Mr. Capito produce "contain confidential and proprietary information" of W&LE. [Doc. 2 at 10].

5

At the hearing in this matter, counsel for W&LE clarified that W&LE maintains it has standing as a person "affected by a subpoena" under Rule 45(c)(3)(B) of the Federal Rules of Civil Procedure [Doc. 20 at 59]. For purposes of this case, Rule 45(c)(3)(B) allows "affected" persons to move to quash a subpoena if the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information[.]" Counsel stated that W&LE did not argue the information sought in the Subpoena is either a trade secret or confidential research. [Doc. 20 at 59]. Further, counsel for W&LE conceded that W&LE was not claiming that the information was confidential development. [Id.]. Counsel for W&LE acknowledged that W&LE's claim of standing relies upon the commercial information component of Rule 45(c)(3)(B). [Id.].

Because W&LE relies upon Rule 45(c)(3)(B)'s commercial information provision, the Court finds that the standing issue is inextricable intertwined with the Court's determination of whether the information requested in the Subpoena is confidential. Accordingly, the Court will address standing through its analysis of confidentiality below.

C.    *Disclosure of Confidential Commercial Information*

In Universal Delaware, Inc. v. Comidata Network, Inc., 2011 WL 1085180 (M.D. Tenn. Mar 21, 2011), the District Court for the Middle District of Tennessee explained well the considerations relevant in determining whether information is confidential commercial information under Rule 45(c)(3)(B), by stating:

> In determining whether requested information is a trade secret or otherwise confidential within the meaning of Rules 26 and 45, a court may consider if the request seeks the " 'type[ ] of information that courts have generally viewed as trade secrets or confidential information,' such as product formulas, marketing plans, or information relating to marketing decisions." Allen v. Howmedica Liebinger, GmhH, 190 F.R.D. 518, 526 (W.D.Tenn.1999) (quoting, American Std., Inc. v. Pfizer, Inc., 828 F.2d 734, 740

6

Case 3:12-mc-00032   Document 22   Filed 02/07/13   Page 6 of 9   PageID #: 827

(Fed.Cir.1987)). In this regard, Tennessee courts have indicated that " 'a trade secret may consist of any formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it.' " Id. (quoting, Hickory Specialties, Inc. v. B & L Lab., Inc., 592 S.W.2d 583, 586 (Tenn.Ct.App.1979)). In addition, a court may consider such things as the extent to which the information is known both inside and outside the business; the precautions taken to guard the secrecy of the information; the value of the information; and the amount of time and expense it would take for others to acquire and duplicate the information. See Deegan v. Strategic Azimuth, LLC, 2011 WL 778407 at *3 (D.D.C. Mar.17, 2011); Johnson Serv. Group, Inc. v. Olivia France, 2011 WL 111582 at *5 (N.D.Tex.2011); Hamilton–Ryker Group LLC v. Keymon, 2010 WL 323057 at * 13 (Tenn.Ct.App. June 28, 2010).

Id. at *3.[2]

With regard to the first of these considerations, W&LE has conceded that the information in Mr. Capito's possession is not a trade secret. Further, W&LE has not indicated that the documents contain information such as "product formulas, marketing plans, or information relating to marketing decisions." Id. At the hearing, counsel for W&LE argued, in a general fashion, that the documents that are in Mr. Capito's possession relate "to Wheeling's entire business operation."

When the Court asked for specific ways in which the disclosure may harm W&LE and pointed out that PW&V and W&LE were not competitors, counsel for W&LE argued that the information could potentially be used "to determine which competitor [P&WV] should try to lease this track to, who they should find as a new operator of this track." [Doc. 20 at 20-21]. The Court finds that this response carries little weight for two reasons. First the response does not identify any specific threat of harm from disclosure of such information. Second, it is purely speculative. Counsel concedes that he has never seen the documents in Mr. Capito's possession,

---

[2] The parties have not disputed or invited decision on the choice of law that would control this dispute. The Court has applied the law of the Circuit and state in which the Subpoena was issued.

7

and W&LE has not cited the Court to any basis for believing this injury would actually occur or would be made more likely to occur by the disclosure of these documents. The Court, thus, finds that W&LE has not demonstrated that the information in the documents in Mr. Capito's possession is a trade secret or gives W&LE "an opportunity to obtain an advantage over competitors who do not use it." Universal Delaware, Inc., 2011 WL 1085180, at *3.

Turning to the second portion of the evaluation, the Court finds that the W&LE has failed to show that the information is not known in the business or that precautions have been taken to guard the secrecy of the information. It is undisputed that the documents sought in the Subpoena were turned over to Mr. Capito, a third party who had a relationship with P&WV. In addition, W&LE concedes that W&LE did not require Mr. Capito, as a third party, to execute or review any written confidentiality agreement prior to receiving the documents. [Doc. 20 at 3]. The failure to subject a third party receiving this information to a written confidential order indicates that the precautions taken to guard the secrecy of the information were minimal.[3] Further, W&LE has not demonstrated that the information is highly valued, and W&LE agreed that the information is not research and development that would allow a competitor to, for example, usurp years of studies or other development work.

The Court finds that W&LE has not demonstrated that the information contained in the documents in Mr. Capito's possession is confidential commercial information. W&LE has not

---

[3] After the hearing, W&LE cited the Court to Harsco Corp. v. Piontek, No. 3:07-0633, 2008 WL 686217, at *10 n.13 (M.D. Tenn. Mar. 8, 2008), for the proposition that: "Although the confidentiality understanding between Harsco and Lichtgitter was apparently entirely oral, that is sufficient." W&LE, however, omitted a significant portion of this direct quote form Harsco and did so without indicating the omission either through use of an ellipse or brackets. The footnote from Harsco reads: "Although the confidentiality understanding between Harsco and Lichtgitter was apparently entirely oral, that is sufficient under the Act." These final three words indicate that the holding is an interpretation of Tennessee Uniform Trade Secrets Act not Rule 45 of the Federal Rules of Civil Procedure. Either way the weighing of the factors under Rule 45 is a holistic examination of the measures taken rather than a clear-cut issue of "sufficient" or "not sufficient." By not requiring a written confidentiality agreement, W&LE has demonstrated little effort to guard the supposedly confidential information. This lack of effort is highly relevant to the examination and weighing.

demonstrated that the documents are protected under Rule 45(c)(3)(B). As a result, the Motion to Quash is not well-taken, and as a corollary, W&LE lacks standing to quash the Subpoena. The Court finds that W&LE's request for a protective is not well-taken for the same reasons. Accordingly, the Motion to Quash and for Protective Order [Doc. 19] will be denied.

Finally, the Court will not order that Mr. Capito produce the documents in his possession pursuant to a confidentiality order. At the hearing, the Court proposed such a course, and both P&WV and W&LE stated that they did not want a confidentiality order entered.

**IV. CONCLUSION**

Based upon the foregoing, Wheeling & Lake Erie's Motion to Quash Non-Party Subpoena to C. Howard Capito and for Protective Order **[Doc. 15]** is **DENIED**. The Clerk of Court **SHALL MAIL** a copy of this Memorandum and Order to Attorney Tyler Chastain, counsel for Mr. Capito, at: 4823 Old Kingston Pike, Suite 300, Knoxville, TN 37919. Mr. Chastain **SHALL CONFER** with counsel for P&WV to make arrangements to comply with the Subpoena as soon as possible. The production made by Mr. Capito and the testimony offered by Mr. Capito will not be subject to a confidentiality order or otherwise sealed unless directed by the District Court for the Western District of Pennsylvania.

**IT IS SO ORDERED**.

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

9

Case 3:12-mc-00032   Document 22   Filed 02/07/13   Page 9 of 9   PageID #: 830